**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL CERVANTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-02164 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| BRIDGESTONE RETAIL OPERATIONS, ) | |
| LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Cervantes has brought this putative class action claiming that he has been underpaid as an employee of Fire Stone Complete Auto Care ("Fire Stone"). Cervantes alleges that Fire Stone's parent and affiliate companies, Defendants Bridgestone Retail Operations, LLC ("BRO"), Bridgestone Americas, Inc. ("BSAM"), and Bridgestone Corporation ("Bridgestone"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105, by failing to pay him minimum wage and overtime wages. (*See* Compl., Dkt. No. 1.) Defendants now move to compel arbitration and dismiss this case on the ground that Cervantes previously agreed to arbitrate any disputes related to his employment. (Dkt. Nos. 13, 22.) For the reasons provided below, the motions are granted.

**BACKGROUND**

For purposes of ruling on the present motions, the Court construes all reasonable inferences from the facts in Cervantes's favor as the plaintiff. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (explaining that "[a]n agreement to arbitrate is a type of forum selection clause" and, for purposes of a motion for improper venue under Federal Rule of Civil

Procedure 12(b)(3), "reasonable inferences from the facts should be construed in the plaintiff's favor").

Cervantes alleges that he worked as a Technician at Fire Stone, one of the BRO's retail facilities, in Clarksville, Tennessee from February 8, 2018 until May 2019. (Compl. ¶¶ 7–10.) When Cervantes started working there, he completed an electronic on-boarding process that required him to agree to BRO's employee dispute resolution ("EDR") plan. (Mem. in Supp. of Mot. to Dismiss, Ex. A, Decl. of Christine Suhadolc ("Suhadolc Decl.") ¶ 18, Dkt. No. 14-1.) The EDR plan states that new employees agree to waive their right to resolve employment disputes through a court case or jury trial and will instead arbitrate their claims. (Suhadolc Decl., Ex. 1, EDR Plan at 9 of 49, Dkt. No. 14-1.) Cervantes does not deny that he agreed to the company's EDR plan. However, he has submitted an affidavit stating that, at the time Fire Stone presented him with the EDR agreement, the hiring manager told him he "needed to 'click through' some materials on the Company's computer system" and assured him that he "'did not have to read' the screens," but just "scroll through and click the boxes." (Resp. in Opp'n to Mot. to Dismiss, Ex. A, Aff. of Daniel Cervantes ("Cervantes Aff.") ¶ 3, Dkt. No. 19-1.) According to Cervantes, the manager did tell him to read through the information related to safety. (*Id.*)

The parties agree that Cervantes electronically signed a one-page document called the "New Employee Acknowledgment and Agreement to Employee Dispute Resolution Plan." It read in relevant part:

> I understand and agree that any employment-related legal dispute I may have with Bridgestone Retail Operations, LLC (the "Company") including, but not limited to, any dispute concerning my application for employment, my employment if I am hired, and the termination of my employment if I am hired, must be resolved exclusively through the Company's Employee Dispute Resolution Plan, hereafter referred to as "the EDR Plan."

2

(EDR Plan at 9 of 49.) The acknowledgment provided a link to the EDR plan and stated that the signer understands he is waiving his right to a court case and jury trial. (*Id.*)

In May 2019, Cervantes moved to Illinois and, on May 12, 2019, started working as a Technician at Fire Stone's Tinley Park location. (Compl. ¶ 10.) He alleges that he worked five days per week and nine to ten-and-a-half hours per day. (*Id.* ¶ 11.) He further alleges that Fire Stone pays its employees using a "flat rate" system, also known as pay "by car." (*Id.* ¶¶ 12–14.) Many of the tasks Cervantes performed were coded as "05," meaning that regardless of how long it took him to finish the job, he would only be paid for half an hour of work. (*Id.* ¶ 17.) Cervantes also alleges that when the business day was slow, he was required to carry out other services at the facility without pay. (*Id.* ¶¶ 18–23.)

When Cervantes filed this suit alleging violations of the FLSA and IMWL, BRO moved to dismiss it or, alternatively, to stay it and compel arbitration. (Dkt. No. 13.) After the parties had completed briefing on BRO's motion, BSAM and Bridgestone moved to join the motion, as well. (Dkt. No. 22.)[1]

---

[1] The parties confirmed at a hearing on August 27, 2020 that briefing on BRO's motion would suffice to address both motions. The Court therefore took both motions under advisement as fully briefed. (*See* Aug. 27, 2020 Min. Entry, Dkt. No. 25.) However, it appears from the Court's review that only BRO and Cervantes are parties to the EDR agreement containing the relevant arbitration clause. (*See* EDR Plan.) Generally, only the parties to a contract may seek to enforce that contract, with certain exceptions. *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004)). As non-signatories to the EDR agreement, BSAM and Bridgestone would typically have to show that one of the relevant exceptions applies and that they have a right to enforce the EDR's arbitration clause. But Cervantes failed to raise this issue and orally confirmed that he did not oppose the Court's reliance on BRO's briefing to address BSAM and Bridgestone's motion. Thus, the Court finds that Cervantes has waived that argument and will proceed under the assumption that BSAM and Bridgestone have the right to invoke the arbitration agreement. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments . . . ." (internal quotation marks and citation omitted)).

**DISCUSSION**

Defendants do not specify the Federal Rule of Civil Procedure pursuant to which they seek to dismiss Cervantes's claims. Within the Seventh Circuit, however, motions to dismiss and compel arbitration are properly brought as motions to dismiss for improper venue under Rule 12(b)(3) because "[a]n agreement to arbitrate is a type of forum selection clause." *Jackson*, 764 F.3d at 773 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630–31 (1985); *Sherwood v. Marquette Transp. Co.*, 587 F.3d 841, 844 (7th Cir. 2009)). In ruling on a Rule 12(b)(3) motion, the court is free to consider evidence outside the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011). Rule 12(b)(3) requires that the court construe reasonable inferences in the plaintiff's favor. *Jackson*, 764 F.3d at 773. At the same time, however, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Faulkenberg*, 637 F.3d at 808 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "governs the enforcement, validity, and interpretation of arbitration clauses." *Jain v. De Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA requires courts to compel arbitration if there is a valid arbitration agreement in place between the parties that covers the issue in controversy. 9 U.S.C. § 4. The burden is on the party seeking to arbitrate to prove that there is an underlying enforceable arbitration agreement. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018); *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) ("[A] party seeking to enforce an agreement has the burden of establishing the existence of an agreement." (internal quotation marks and citation omitted)).

It is appropriate for the Court to compel arbitration if the movant shows that the following three elements are met: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Cervantes does not dispute that the third element is met here, since he is refusing to arbitrate his claims with Defendants. He contends, however, that Defendants have failed to establish the first two elements. As to the first, Cervantes argues that there is no valid arbitration agreement because he did not properly assent to the EDR plan and the agreement was not supported by adequate consideration. As to the second, Cervantes argues that the agreement to arbitrate does not apply to the present dispute, which he filed after his transfer to Fire Stone's Tinley Park location. Finally, Cervantes argues that Defendants are estopped from enforcing the arbitration clause in the EDR agreement.

### I. Whether a Valid Arbitration Agreement Exists

"In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts." *UnitedHealthcare, Inc.*, 800 F.3d at 857. Neither Cervantes nor Defendants raise a choice-of-law issue. However, Defendants have cited both Tennessee and Illinois state law in their briefing, while Cervantes has cited exclusively Illinois state law. For present purposes, the Court applies Illinois law, recognizing that "absent a challenge by either party as to the choice of law, the law of the forum state will govern the substantive issues raised in the pleadings." *Parrillo v. Safeway Ins. Co.*, 1994 WL 380625, at *2 (N.D. Ill. July 18, 1994). Furthermore, whether Illinois or Tennessee law applies does not impact the outcome in this case, as the elements required to find a valid contract are the same under both: offer, acceptance, consideration, and mutual assent. *See Nat'l Prod. Works Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011); *Ace Design*

*Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016–00089–COA–R3–CV, 2016 WL 7166408, at *7 (Tenn. Ct. App. Dec. 8, 2016). Cervantes challenges both his assent to the EDR agreement and the sufficiency of Defendants' consideration under the agreement.

### A. Mutual Assent

Cervantes claims that he did not assent to the EDR agreement because he did not knowingly or voluntarily accept its terms. He emphasizes that the hiring manager who gave him the EDR agreement discouraged him from reading through it carefully.

In interpreting agreements to arbitrate, Illinois courts have rejected the "knowing and voluntary" approach asserted by Cervantes in favor of the more objective standard based on traditional contract law principles. *See Melena v. Anheuser-Busch, Inc*., 847 N.E.2d 99, 107 (Ill. 2006). Rather than looking at each party's subjective understandings of the contract or their undisclosed intentions, Illinois courts consider their "outward expressions such as words and acts." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (internal quotation marks and citation omitted). Generally, signing a written contract creates the presumption that the signer has notice of its terms. *Id.* Even an employee's continued performance on the job after receiving a contract related to his employment may signify his assent to the contract. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712–14 (7th Cir. 2019).

In this case, Cervantes electronically signed the EDR agreement, which clearly stated that he was waiving his right to bring a court case against his employer in favor of arbitration. Cervantes also manifested his assent to the terms of the agreement by continuing his employment with Fire Stone. Thus, under Illinois's objective standard, the Court finds that Cervantes assented to the arbitration agreement.

6

### B. Valid Consideration

Cervantes also argues that the arbitration agreement he signed was not supported by valid consideration on Defendants' part because he was an at-will, rather than a contracted, employee. But the Seventh Circuit has acknowledged that "an employer's promise to continue employing an at-will employee could constitute consideration for an employee's promise to forego certain rights." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 734 (7th Cir. 2002). An employer's agreement to be bound by the results of arbitration in its disputes with employees may also constitute sufficient consideration on its end. *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636–37 (7th Cir. 1999). In *Michalski*, the Seventh Circuit found that statements in the employer's handbook describing arbitration as resulting in a final, binding resolution demonstrated a mutual promise to arbitrate and served as valid consideration on the employer's part. *Id.* Here, Defendants have presented evidence that their EDR Plan similarly summarizes its employee arbitration process and describes the arbitrator's award as "final and binding." (EDR Plan at 17 of 49.) The Court thus finds that the EDR agreement was supported by valid consideration based on Defendants' offer of employment and their agreement to be bound by the outcome of arbitration.

### II. Whether Cervantes's Claims Are Within the Scope of the Arbitration Agreement

Cervantes next asserts that even if his agreement to arbitrate is valid, it does not apply to this dispute because he signed the EDR agreement in Clarksville, Tennessee, and he filed this suit after transferring to Tinley Park, Illinois.

Once the court finds that there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to show that the dispute is not covered by the agreement. *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am.*

*Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987)). Furthermore, "any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1029–30 (7th Cir. 2002) (internal quotation marks and citation omitted). Courts look to the language of the underlying agreement to determine the scope of disputes subject to arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

In this case, Cervantes signed an agreement stating that he agreed to resolve "***any employment-related legal dispute*** [he] may have with Bridgestone Retail Operations, LLC" through the company's EDR plan. (EDR Plan at 9 of 49 (emphasis provided).) By its plain terms, the scope of the EDR is not limited to Cervantes's employment at one particular retail location but applies to all his employment-related disputes with BRO. The plaintiff in another case in this District, *Hoenig v. Karl Knauz Motors, Inc.*, made a similar argument in regard to an arbitration agreement she signed before leaving her job and being rehired five months later. 983 F. Supp. 2d at 957–58. Years later, the plaintiff brought a lawsuit for issues that arose during her second period of employment. *Id.* at 962–64. The court held that notwithstanding the gap in the plaintiff's employment, her earlier agreement to arbitrate remained binding, noting that the agreement did not contain an expiration date and that when the plaintiff was rehired, she did not sign a new, superseding agreement. *Id.* Similarly, Cervantes has failed to present any evidence that the EDR agreement he signed in Tennessee does not apply to his employment disputes in Illinois. The Court thus finds that Cervantes's present dispute with Defendants is covered by the arbitration clause in the EDR agreement he signed in Clarksville.

### III. Whether Defendants Are Estopped from Enforcing the Arbitration Agreement

Cervantes finally claims that Defendants are estopped from asserting their right to arbitrate because the hiring manager, acting on Defendants' behalf, told him he did not have to

read the agreement. In Illinois, the doctrine of equitable estoppel arises "'where a person by his or her statements and conduct leads a party to do something that the party would not have done,' thereby placing the other party in a worse position." *Prestwick Cap. Mgmt., Ltd. v. Peregrine Fin. Grp.*, 727 F.3d 646, 662–63 (7th Cir. 2013) (quoting *Maniez v. Citibank, F.S.B.*, 937 N.E.2d 237, 245 (Ill. App. Ct. 2010)). To succeed on a claim of estoppel, the claimant must show that the following elements are met: (1) another party knowingly misrepresented or concealed material facts; (2) the claimant did not know that those representations were false; (3) the other party intended that the claimant rely on the misrepresentations (4) the claimant reasonably relied on the misrepresentations to his detriment; and (5) the claimant is likely to be prejudiced if the other party is not equitably estopped. *Id.* at 663. The claimant must prove estoppel by clear and unequivocal evidence. *Maniez*, 937 N.E.2d at 245.

The Court concludes that the elements of estoppel are not met in this case. Cervantes claims that he relied on his manager's assertion that he did not have to read through the EDR materials to his detriment by consenting to the plan without reviewing it. (Cervantes Aff. ¶ 4.) But he has not presented any evidence that his hiring manager knowingly misrepresented or concealed any material facts with respect to the EDR agreement. At most, Cervantes has established that the hiring manager downplayed the significance of the EDR materials. There is no evidence to suggest that the hiring manager did so intending Cervantes to rely upon his assertions and waive his right to litigate his employment claims. Furthermore, the Court finds that it was not reasonable for Cervantes to rely on the manager's statements and forego his opportunity to review the EDR materials before agreeing to them. *Cf. Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 9 (Ill. App. Ct. 2001) ("The law will not allow a person to enter into a transaction with eyes closed to material facts and then claim fraud by deceit.").

Cervantes has not presented any evidence that, for instance, the manager did not provide him enough time to review the EDR plan or that Defendants pressured him into signing it. *See id.* ("A plaintiff may not generally rely on representations made when the plaintiff has ample opportunity to ascertain the truth of the matter ***before*** acting."). Without more evidence that Defendants or the hiring manager purposefully misled Cervantes as to the contents of the EDR agreement, the Court declines to relieve Cervantes of his obligation to arbitrate his employment claims under a theory of estoppel.

## CONCLUSION

Because Defendants have established that Cervantes agreed to arbitrate any disputes related to his employment, Defendants' motions to dismiss (Dkt. Nos. 13, 22) are granted. The dismissal is without prejudice to Cervantes pursuing his claims in the appropriate forum.

ENTERED:

Dated: December 18, 2020

_____
Andrea R. Wood
United States District Judge